▪ In the Matter of BENJAMIN E. MYERS et al., Petitioners, v STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained, as modified, a sales tax assessment imposed pursuant to section 1141 of the Tax Law. ¶ Prior to 1976, petitioner Benjamin Myers was a shareholder in Main & Phillips, Inc., which operated a restaurant and bar. In February, 1976, Benjamin Myers and F. Armond Bourdon purchased the outstanding stock of Main & Phillips from the other stockholders. During this same month, petitioners executed an agreement with the Farmers National Bank of Malone in which they personally guaranteed the payment of a certain loan by the bank to Main & Phillips. ¶ In October, 1976, petitioner Benjamin Myers sold his stock in Main & Phillips; however, he was not released from his obligations under the guarantee. Main & Phillips continued to operate at a location rented from Benjamin Myers. In October, 1979, after a lengthy default in making its rent payments, Benjamin Myers brought an action to evict the corporation. At approximately the same time, Main & Phillips also defaulted on its promissory note with the Farmers National Bank. The bank thus notified those involved that it intended to foreclose its chattel mortgage, sell the corporation's business assets and seek any deficiency from petitioners under their guarantee. ¶ Accordingly, in an attempt to mitigate their losses, petitioners, Benjamin Myers and his wife executed an agreement with Main & Phillips on November 30, 1979. Pursuant to this agreement, the "sellers" conveyed to petitioners "all the contents, tables, chairs, bar, kitchen equipment, food, liquor, beer and any and all contents" being stored at its place of business. Petitioners agreed to assume the balance of $33,255.48 due upon the note held by the Farmers National Bank. Petitioners thereafter operated a restaurant on the premises. ¶ Petitioners failed to notify the Tax Commission of this transaction and, by notice of claim, the Department of Taxation and Finance informed them of a possible claim for sales tax. Subsequently, total sales tax, penalty and interest in the amount of $43,765.29 was determined to be payable from petitioners, as they were found liable for the tax due from Main & Phillips as a result of their failure to comply with subdivision (c) of section 1141 of the Tax Law. After a hearing, the Tax Commission held that the November 30, 1979 agreement constituted a bulk sale within the meaning of subdivision (c) of section 1141 of the Tax Law. Accordingly, since petitioners failed to comply with the notice requirements of that section, they were found personally liable for the sales tax due from Main & Phillips. The Tax Commission, however, modified the original assessment by canceling the penalty and reducing the interest. This proceeding was then commenced to challenge that determination. ¶ Petitioners argue that since no moneys were transferred to Main & Phillips, the provisions of subdivision (c) of section 1141 of the Tax Law do not apply. In this regard, subdivision (c) of section 1141 provides, *inter alia,* that: ¶ "Whenever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of business, the purchaser, transferee or assignee shall at least ten days before taking possession of the subject of said

sale, transfer or assignment, or paying therefor, notify the tax commission by registered mail of the proposed sale and of the price, terms and conditions thereof whether or not the seller, transferrer or assignor, has represented to, or informed the purchaser, transferee or assignee that he owes any tax pursuant to this article, and whether or not the purchaser, transferee, or assignee has knowledge that such taxes are owing, and whether any such taxes are in fact owing * * * ¶ "For failure to comply with the provisions of this subdivision the purchaser, transferee or assignee * * * shall be personally liable for the payment to the state of any such taxes theretofore or thereafter determined to be due to the state from the seller, transferrer or assignor". ¶ Although petitioners submit a rather sympathetic case in that, due to their failure to file the required notice, they are now held liable for the unpaid sales tax upon the value of the assets they acquired and the sales of Main & Phillips from November, 1976 through 1979, we are unable to conclude that the Tax Commission irrationally concluded that the transaction in question fell within the ambit of section 1141. Of particular importance is the fact that subdivision (c) of that section expressly applies to any "sale, *transfer,* or *assignment*" (emphasis added). ¶ Moreover, contrary to their suggestion, it could be found that petitioners provided valid consideration since in the November 30, 1979 agreement petitioners promised to incur *new* financial obligations in return for the transfer of the Main & Phillips' assets. Specifically, under the February 25, 1976 guarantee, petitioners' liability on the bank loan was secondary, accruing only subsequent to a default by Main & Phillips. By their November 30, 1979 agreement, however, petitioners assumed primary liability on the note. ¶ More troublesome to us is the fact that in rendering its determination, the Tax Commission failed to consider the fact that the liability imposed upon petitioners by subdivision (c) of section 1141 of the Tax Law is limited. That section provides, *inter alia,* that: "the liability of the purchaser, transferee or assignee *shall be limited to an amount not in excess of the purchase price or fair market value of the business assets sold, transferred or assigned* to such purchaser, transferee, or assignee, whichever is higher" (emphasis added). ¶ In the instant case, although the assets acquired by petitioners were valued by the Tax Commission at $10,000, the Tax Commission failed to determine the consideration given, or more specifically, a purchase price. In this regard, under the facts of this case, we note that the purchase price certainly does not approximate the tax assessment herein of $25,580.85. Accordingly, the matter must be remitted to the Tax Commission for a determination of the purchase price and for a recalculation of the tax liability in accordance with the limits imposed by subdivision (c) of section 1141 of the Tax Law. ¶ Determination modified, by annulling so much thereof as sustains the assessment in the sum of $25,580.85 plus interest, matter remitted to the State Tax Commission for further proceedings not inconsistent herewith, and, as so modified, confirmed, without costs. Kane, J. P., Main, Casey, Levine and Harvey, JJ., concur.